IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Travis Mandell Kemp, | C/A No.: 1:12-1481-JFA-SVH |
| Plaintiff, | |
| vs. | |
| Paul C. Drago; Cecilia Reynolds; Jeanna McKay; Jerry Washington; Investigator Roberson; Darren Seward; Daniel Dubose; Tonya Huntley; Wyane Thompson; Derrick Mungo; Allah Brown; Lester Small; Joseph Stinnet; Pamela Hough; Ann Settlers; Luanne M. Mungo; Linda M. Coley; Linda K. Lackey; Doris A. Cooke, | REPORT AND RECOMMENDATION |
| Defendants.[1] | |

Plaintiff Travis Mandell Kemp, proceeding *pro se* and *in forma pauperis*, filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights while incarcerated at Kershaw Correctional Institution ("KCI"), a facility of the South Carolina Department of Corrections ("SCDC"). Plaintiff sues Paul C. Drago, Luanne M. Mungo, Linda M. Coley, Linda K. Lackey, and Doris A. Cooke ("Medical Defendants") for alleged deliberate indifference to his serious medical needs. Additionally, Plaintiff sues Cecilia Reynolds, Jeanna McKay, Jerry Washington, Darren Seward, Investigator Roberson, Tonya Huntley, Wyane Thompson, Allah Brown, Lester Small, Derrick

---

[1] Several of the defendants' names are spelled differently throughout the complaint and in the summary judgment motions. Defendants' names are reflected in this Report and Recommendation as they appear in the caption of the complaint form. [Entry #1 at 1].

1

Mungo, Ann Settlers, Pamela Hough, Joseph Stinnet, and Daniel Dubose ("Officer Defendants") for alleged (1) use of excessive force; (2) deprivation of special diet; (3) failure to process grievances; and (4) due process violations during his disciplinary hearings.[2]

This matter comes before the court on the motions for summary judgment by Medical Defendants [Entry #39] and Officer Defendants [Entry #50]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to the defendants' motions. [Entry #40, #51]. These motions having been fully briefed [Entry #54, #58, #63, #64], they are now ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motions for summary judgment are dispositive, this Report and Recommendation is entered for review by the district judge. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends granting the motions of Medical Defendants and Officer Defendants.

---

[2] Although Plaintiff does not appear to sue all Officer Defendants on each of these claims, the defendants' names are often so comingled in Plaintiff's recitation of the facts that separating the claims is tedious or impossible. In these instances, the undersigned has analyzed these claims as brought against all Officer Defendants for ease of reference. *See Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) ("[The] Court's task is not to discern the unexpressed intent of the pro se litigant, but what the words of the filing mean.").

I.     Factual Background

Plaintiff, an inmate housed in the Special Management Unit ("SMU") of KCI, alleges that he requires a special diet due to food allergies. [Entry #1 at 2, 39]. Plaintiff claims that he began experiencing problems receiving his diet tray, and that his consumption of food caused a rash, weight loss, stomach pain, hemorrhoids, and anal bleeding. [Entry #1 at 9, #1-1 at 2, 4–5]. Plaintiff also alleges that he has problems with pain in his feet, although it is unclear whether such pain is related to his allergies and dietary restrictions. [Entry #1 at 9, #1-1 at 21].

Plaintiff further alleges that he was sprayed with chemical munitions by defendant Lester Small on March 11, 2011, and by defendant Tonya Huntley on April 5, 2012. [Entry #1 at 6; Entry #1-1 at 26, 29, 87–88]. Plaintiff allegedly had difficulty breathing after the March 2011 incident. [Entry #1 at 8; Entry #1-1 at 30–32]. He was allowed to shower, but alleges he did not receive immediate medical attention for chest pains, eye swelling, and chemical burns on his face. *Id*.

Plaintiff also complains that he received disciplinary charges associated with the 2011 and 2012 chemical munitions incidents, for which Disciplinary Hearing Officer ("DHO") Ann Settlers found him guilty. [Entry #1 at 8; Entry #1-1 at 37]. Plaintiff claims that defendant Grievance Coordinator Pamela Hough frustrated his attempts to exhaust his administrative remedies. [Entry #1 at 6; Entry #1-1 at 61]. Plaintiff seeks injunctive relief and monetary damages. [Entry #1 at 10–12].

II.     Discussion

    A.     Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine dispute for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the

4

requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    B.    Analysis

        1.    Medical Defendants' Motion for Summary Judgment

Plaintiff alleges that Medical Defendants' actions in responding to his special dietary needs and medical issues (including weight loss, rash, chest pain, eye problems, allergies, and foot pain) constitute deliberate indifference to his serious medical needs. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments that "involve the unnecessary and wanton infliction of pain." *Id.* at 103 (quoting *Gregg v. Georgia*, 428 U.S. 153, 169–73(1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

*Estelle*, 429 U.S. at 103–105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

5

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 106.

The Fourth Circuit considered this issue in the case of *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851–52 (citations omitted). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. at 102–103; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986).

Here, Plaintiff has not demonstrated a claim of deliberate indifference to his serious medical needs. Plaintiff alleges that Medical Defendants were aware of, but deliberately indifferent to his food allergies, need for a special diet, and resulting medical issues, including weight loss, rash, and hemorrhoids. Plaintiff further claims that Medical Defendants did not provide adequate treatment for his foot pain, chest pains, and eye problems. However, Medical Defendants submitted the affidavit of defendant Doctor Paul C. Drago and attached Plaintiff's medical records. [Entry #39-2]. The affidavit and attached medical records demonstrate that Plaintiff received medical treatment for all of

his alleged medical issues. *Id.* at 15; *see also* Entry # 39-3; Entry # 39-4. The affidavit further states that Plaintiff has not experienced any serious or life threatening problems, nor has he had any urgent medical problems requiring immediate or emergency care. [Entry #39-2 at 15]. The affidavit notes Plaintiff's fluctuation in weight, but demonstrates that Plaintiff's weight loss was not medically significant and that he has never been malnourished. *Id.* Additionally, food allergy testing revealed that Plaintiff is allergic only to corn and peanuts. *Id.*

Plaintiff's response in opposition to Medical Defendants' motion for summary judgment alleges inaccuracies in Drago's affidavit. [Entry #54]. Plaintiff claims that, despite the 267 times Medical Defendants provided him some form of medical treatment, there were periods of time where they failed "intentionally to act reasonable to the situation once brought to [their] attention." *Id.* at 2. However, in light of the extensive amount of medical attention Medical Defendants provided Plaintiff, allegations of brief delays do not demonstrate treatment that is "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851.

Additionally, to the extent Plaintiff alleges that Medical Defendants' actions constituted negligence or malpractice, such claims are insufficient to state a claim pursuant to § 1983. *See Daniels v. Williams*, 474 U.S. 327, 335–36 n. 3 (1986). Therefore, it is recommended that Medical Defendants be granted summary judgment.

7

### 2. Officer Defendants' Motion for Summary Judgment

Plaintiff asserts claims against Officer Defendants for their alleged: (1) use of excessive force on two occasions; (2) failure to accommodate his special diet; (3) failure to process his grievances; and (4) denial of due process during disciplinary proceedings.

#### a. Excessive Force Claims

Plaintiff claims the use of the chemical munitions on March 11, 2011 and April 5, 2012, constitutes excessive force in violation of the Eighth Amendment. It is well-established that the use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm," rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010). The objective component of an excessive force claim is not nearly as demanding, however, because "'[w]hen prison officials maliciously and sadistically use force to cause harm'. . . 'contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" *Wilkins*, 559 U.S. at 37 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).

However, courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." *Whitley,* 475 U.S. at 321–22.  The Supreme Court has recognized that prison officials work in an environment where there is an ever-present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed.  *Id.*  The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline." *Id.* at 322.

Federal courts closely scrutinize the use of tear gas or mace in correctional facilities.  *See, e.g., Bailey v. Turner*, 736 F.2d 963 (4th Cir. 1984); *Greear v. Loving*, 538 F.2d 578 (4th Cir. 1976).  This is because, even when properly used, such weapons "possess inherently dangerous characteristics capable of causing serious and perhaps irreparable injury to the victim." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). Accordingly, although it is not per se unconstitutional for guards to spray mace at prisoners confined in their cells, it is necessary to examine the "totality of the circumstances, [including] the provocation, the amount of gas used, and the purposes for which the gas is used [to] determin[e] the validity of the use of tear gas in the prison environment."  *Bailey*, 736 F.2d at 969; *see also Justice v. Dennis*, 834 F.2d 380, 383 (4th Cir. 1987) (en banc), *vacated on other grounds*, 490 U.S. 1087 (1989).

Mace and pepper spray can be constitutionally used in small quantities to control a "recalcitrant" inmate. *Bailey*, 736 F.2d at 968–69.  A limited application of chemical

9

munitions may be "much more humane and effective than a flesh to flesh confrontation with an inmate." *Soto v. Dickey*, 744 F.2d 1260, 1262 (7th Cir. 1984). Moreover, prompt washing of the affected area of the body will usually provide immediate relief from pain. *Id.* Furthermore, because a limited use of mace constitutes a relatively mild response compared to other forms of force, the initial application of mace indicates a "tempered" response by the prison officials. *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996).

The Supreme Court has directed courts to balance several factors in determining whether prison officials acted maliciously and sadistically. These factors include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. *Whitley*, 475 U.S. at 321.

i.     March 11, 2011 Incident

Here, the use of chemical munitions on March 11, 2011, was justified. The record indicates that Plaintiff began banging on his cell door on March 11, 2011, complaining about the food on his tray. [Entry #1-1 at 26]. Plaintiff's own pleadings indicate that he continued to knock on the cell to gain the attention of senior officers after defendant Small directed Plaintiff to "get off the door" and warned him that failure to comply would result in a spray of chemical munitions. *Id.* at 26–27; *see also* Entry #58 at 13. Therefore, the use of force appears justified as Plaintiff was ordered to stop being

disruptive, but failed to comply.[3] [Entry #1-1 at 26–27]. Although Small's use of 72 grams of chemical munitions is significant, it does not appear that Plaintiff suffered any physical reaction greater than typical. Plaintiff did not suffer a serious injury from the exposure, as the medical report does not indicate he was in acute distress. [Entry #1-3 at 18]. Additionally, it appears that Small was reasonable in perceiving a threat from Plaintiff, as Plaintiff admits he refused to immediately comply with Small's multiple directives.  Although Plaintiff was confined in his cell, inmates cannot be allowed to be violate direct orders of correctional officers.  With regard to Small's efforts to temper the severity of the force applied, Plaintiff admits that he was allowed to take a shower shortly afterward, and he was seen by medical approximately an hour after the incident. [Entry #1-3 at 18].  Therefore, after balancing the *Whitley* factors, the undersigned recommends that Officer Defendants be granted summary judgment related to the March 11, 2011, incident.

ii.     April 5, 2012 Incident

Plaintiff has not exhausted his administrative remedies with regard to the alleged use of excessive force on April 5, 2012.  The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with  respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  This requirement "applies to all inmate suits about

---

[3] According to Small, Plaintiff then grabbed his wrist. [Entry #15-19 at 2]. However, the undersigned has not considered this allegation in the analysis, as the facts must be viewed in the light most favorable to Plaintiff as the non-moving party.

11

prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. *Porter*, 534 U.S. at 524.

Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original)). Thus, the prison's requirements, and not the PLRA, define the boundaries of proper exhaustion. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005). Pursuant to SCDC policy, an inmate seeking to complain of prison conditions must first attempt to informally resolve his complaint. Next, an inmate may file a "Step 1 Grievance" with designated prison staff. If the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility with a "Step 2 Grievance."

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford*, 548 U.S. 81, 89 (internal citations omitted). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal

court." *Id.* Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.

Here, a review of Plaintiff's grievance history reveals that he did not file a grievance concerning the April 5, 2012, release of chemical munitions into his cell. [Entry #50-4 at 4]. Plaintiff does not dispute that he failed to file a grievance concerning the April 2012 incident. Instead, Plaintiff claims that he attempted to exhaust his administrative remedies multiple times, but "deficiencies in administration" rendered any available remedies inadequate. [Entry #58 at 14]. Such vague and general allegations regarding the grievance process are insufficient to overcome the undisputed evidence that Plaintiff failed to exhaust his administrative remedies for the 2012 excessive force claim. As the court lacks jurisdiction over Plaintiff's claims associated with the release of chemical munitions into his cell on April 5, 2012, Officer Defendants are also entitled to summary judgment on that claim.[4]

      b.  Deliberate Indifference to Plaintiff's Dietary Needs

Plaintiff alleges that the Officer Defendants failed to accommodate his special diet. [Entry #1 at 7–8]. To state a claim that conditions of confinement violate

---

[4] Officer Defendants claim Plaintiff has failed to exhaust his administrative remedies on his claims related to the alleged use of excessive force in 2011 and failure to accomodate his special diet. However the affidavit submitted in support indicates that Plaintiff filed a Step 2 grievance regarding his allegedly improper diet. [Entry #50-4]. Additionally, the affidavit indicates only that the grievance coordinator is unaware of whether Plaintiff submitted a Step 2 grievance with regard to the alleged use of excessive in 2011. Therefore Officer Defendants' have failed to prove the defense of failure to exhaust on claims other than the alleged use of excessive force in April 2012.

13

constitutional requirements, a plaintiff must show "'both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991)). Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition. *See Strickler*, 989 F.2d at 1380–81.

It is well-settled that inmates have a right to "nutritionally adequate food, prepared and served under conditions that do not present an immediate danger to the health and well being of the inmates who consume it." *Shrader v. White*, 761 F.2d 975, 986 (4th Cir.1985) (internal quotations marks and citation omitted); *see also Farmer*, 511 U.S. at 833. The Constitution does not guarantee, however, food that is prepared and served in a culinarily-pleasing manner. *See Lunsford v. Bennett*, 17 F.3d 1574 (7th Cir. 1994) (holding that allegations of cold, poorly prepared beans were insufficient to state a constitutional claim); *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (holding that a temporary diet of Nutraloaf did not rise to a constitutional violation); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."); *see also Williams v. Berge*, No. 04-1348, 2004 WL 1435200, at *1 (7th Cir. June 24, 2004) (unpublished) ("Prisoners have a right to adequate food, but not to food that is tasty or even appetizing[.]") (internal citations omitted).

Assuming the allegations in Plaintiff's complaint to be true, he has not shown that the conditions of confinement rise to the level of a constitutional violation. Plaintiff does not allege a denial of food in this case. Rather, he claims that Officer Defendants have failed to ensure that Plaintiff receives a special diet tray for his "Cholinergic Uriticaria," which allegedly causes an allergic reaction. [Entry #1-1 at 2]. While Plaintiff generally complains that he occasionally received food trays in SMU that did not comply with his dietary restrictions, Plaintiff provides insufficient facts to demonstrate that the meals provided were unhealthy, nutritionally deficient, or a danger to him. Further, while Plaintiff claimed allergies to peanut butter, carrots, cabbage, rice, apples, cheese, noodles, grits, squash, greens, and salami [Entry #39-4 at 4], an allergy test revealed that Plaintiff is allergic only to corn and peanut [Entry #39-3 at 2]. Further, Plaintiff's allegation of a seventeen-pound weight loss does not state a cognizable claim, as the record demonstrates that such weight fluctuation was not medically significant, Plaintiff was never malnourished, and his weights were largely consistent over the period in which medical records have been provided. [Entry #39-2 at 15]. Therefore, Plaintiff has failed to demonstrate that Officer Defendants were deliberately indifferent to his health in relation to providing food.

### 3.     Grievance Procedure

Plaintiff alleges that defendant Pamela Hough frustrated his attempts to file grievances [Entry # 1 at 6; Entry 1-1 at 61] and that many of the Officer Defendants failed to respond to his requests to staff. [Entry #1-1 at 43–52; Entry #58 at 7]. A prisoner has no constitutional right to a grievance procedure. *See Adams v. Rice*, 40 F.3d

15

72, 75 (4th Cir. 1994); *Daye v. Rubenstein*, No. 10–6938, 2011 WL 917248, at *2 (4th Cir. March 17, 2011); *Ashann-Ra v. Commonwealth of Virginia*, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000) ("[A] prison official's failure to comply with the state's grievance procedure is not actionable under § 1983."). Therefore, Officer Defendants are entitled to summary judgment on Plaintiff's claims related to his grievances.[5]

### 4. Disciplinary Charges

Plaintiff complains that the release of chemical munitions into his cell in March 2011 and April 2012 resulted in disciplinary charges. He further alleges that DHO Settlers found him guilty and sanctioned him to the loss of privileges and good time credit without allowing him to present a defense and/or call witnesses. [Entry #1 at 8; Entry #1-1 at 37]. Disciplinary records indicate that Settlers presided over Plaintiff's disciplinary hearing on March 22, 2011, and found Plaintiff guilty of striking an SCDC employee. [Entry #50-8 at 2]. Settlers sanctioned Plaintiff with the loss of privileges and nine days of good conduct time. *Id.* Settlers also found Plaintiff guilty of refusing or failing to obey orders on April 17, 2012, and issued Plaintiff a reprimand. [Entry #50-9 at 2].

Plaintiff is entitled to a hearing and/or other procedural safeguards for protected interests, such as the loss of good time credits. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). However, a prisoner is not entitled to a due process hearing every time

---

[5] Plaintiff discusses the actions of "Mrs. Ann H., Grievance Branch" in the body of the pleadings, but fails to name this individual as a defendant in the caption or "parties" section of the complaint. [Entry #1-1 at 60]. To the extent Plaintiff intended to name this individual as a defendant in this case, Mrs. Ann H. would likewise be entitled to summary judgment for the same reasons as the Officer Defendants.

16

action is taken to control his behavior. *See Sandin v. Connor*, 515 U.S. 472, 478 (1995) (the "Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner") (citation omitted). The record demonstrates that the April 2012 disciplinary hearing did not result in the loss of good time credit, and Plaintiff has provided no facts implicating any other protected liberty interest associated with that disciplinary conviction. Therefore, in order to state a § 1983 claim for the April 2012 disciplinary hearing, Plaintiff would have to present evidence sufficient to show that Settler's decision in his case was arbitrary, capricious, or based on some other unlawful motive. *See Sandin*, 515 U.S. at 486; *Crowe v. Leeke*, 259 S.E.2d 614, 615 (S.C. 1979). Plaintiff has presented no such evidence, as he admits in his pleadings that he disobeyed an officer's direct order to cease knocking on his cell door on April 5, 2012. [Entry #64 at 7].

Plaintiff's claim related to his March 2011 disciplinary conviction, for which he was sanctioned with a loss of good time credits for striking an SCDC employee, also fails. In *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), the United States Supreme Court held that a state prisoner's claim for damages is not cognizable under § 1983 where success of the action would implicitly question the validity of the conviction or duration of the sentence, unless the prisoner can demonstrate that the conviction or sentence has been previously invalidated. The Supreme Court subsequently extended the holding in *Heck* to a prisoner's claim for damages regarding loss of good time credits. *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (holding that a "claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker

17

that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983."). While *Heck* does not universally apply to all suits challenging prison disciplinary proceedings or institutional offense convictions, in situations where the administrative action affects credits toward release based on good time served, *Heck* bars the § 1983 claim. *See Muhammad v. Close*, 540 U.S. 749, 751 (2004). Plaintiff provides no facts to demonstrate that his challenged disciplinary convictions have been invalidated. Therefore, his § 1983 claim related to his March 2011 disciplinary conviction is barred by the holdings of *Heck* and *Edwards*.[6]

III.     Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that defendants' motions for summary judgment [Entry #39; Entry #50] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 15, 2013                                              Shiva V. Hodges
Columbia, South Carolina                         United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

---

[6] To the extent Plaintiff may be seeking the return of any earned good conduct time credits, such relief is unavailable in a § 1983 action. See *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (holding that habeas corpus is the exclusive remedy for a prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release).

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).